Good morning, Your Honor. Randy Volkel for the appellant, Mr. Fisher. The entire system dropped the ball on this, but I'd like to start with CJA counsel. And I will concede at the beginning that I'm not claiming that there was ineffective assistance under Strickland, but CJA counsel has to be better than just not ineffective. And I don't think that counsel has met the standards that we set for CJA counsel, starting with the Supreme Court in Wilkins, and this Court has been very consistent with cases like Nebbe. Thank you, Your Honor. And more recently, Taylor, which has made me somewhat unpopular on my listserv. But the point is that when CJA counsel drops the ball, we should give the client a second shot. He and everybody who looks at it should not believe that the result was changed by assigned counsel not performing. And in this case, there's no conceivable strategic reason for not raising at the sentencing that there was an agreement that the prosecutor wouldn't oppose concurrent sentences. There's nothing to be gained by not raising. All of that was, however, brought to the attention of the sentencing judge by the Bureau of Prisons when the issue was very sharply presented. And the judge could have done something then if the judge thought something should be done. Well, I think the judge was, unfortunately, the biggest ball dropper of all the people who were involved in this by not at least responding to the Bureau of Prisons. I mean, this is something that's far too important to be done on the floor. Let me make sure I understand what happened here. So the plea agreement says the government will not oppose concurrency. If it's requested. Right. And so the burden is on counsel to request it. Yes. It seems self-evident that it was intended that counsel would request it or you wouldn't have had that provision in the agreement. Yes. Counsel did not request it. And then when the Bureau of Prisons tries mightily to find out from the judge what her position is, she ignores it. That's correct, Your Honor. So starting at the sentencing, counsel didn't request it. Certainly, the prosecutor was aware that it was an issue and really should have raised it. The government should have raised it itself. I mean, because that would have saved my colleague a trip down from the northern district. Why should we assume that the judge ignored it rather than that the judge considered that there was no reason to act because it was not justified? Well, it's not hard to send back a note saying, no, I don't want to do this. The judge didn't respond at all. They tried several times. They did. They sent one letter and made several calls and got no response at all. But even once all of that happened, then it became— How do we remedy something like this? Assuming that people are falling down on the job, we don't have an effective assistance of counsel. We don't have an abuse of discretion by the district judge. It's hard to see an abuse of discretion by the Bureau of Prisons. And so you could characterize it as a whole series of failures or you could characterize it as a whole series of nonexistent appellate issues. Well, I disagree that the Bureau of Prisons hasn't abused its discretion. Before you turn to the Bureau of Prisons, can you explain why? I mean, why isn't this properly looked at through the lens of ineffective assistance of counsel? Well, I think we could. I'm more concerned that it would not be unreasonable for this court to find that counsel's performance as a whole was not ineffective despite one failure. I mean, this is clearly a failure. He clearly dropped the ball. There's no strategic reason for not— So I'm—the same question that Judge Livingston just raised. On something of highly material importance, five years in prison where counsel has worked out from all evidence and arrangement with the government that they will not impose—they will not oppose concurrency, the counsel totally fails to raise it with the district court. Why isn't that ineffective? I certainly won't argue against ineffective assistance. But even if you don't find ineffective assistance, I think that the failure of CJA counsel under this court's precedence would be enough to send it back for another go. Let me ask a different question, if I may. This was only raised, though, ineffective for CJA or whatever you want to call the failure of counsel. It was only raised on appeal, yes? Right. Mr. Fisher was pro se and said things that I guess certainly you could infer that he wasn't pleased with his counsel because he said that his counsel told him he was going to get concurrent sentences, and he didn't end up with it. So he certainly has suggested that counsel misled him at a minimum, but he did not actually raise in those terms ineffective assistance of counsel. Those who are properly before us. That's why I didn't specifically argue ineffective assistance of counsel, but I think that the failure of CJA counsel is something that this court can always police and has done. So that's why I'm relying more on the performance of CJA counsel than on saying that counsel was actually— Is there an argument that a liberal construction of a pleading would have put ineffective assistance of counsel before the district court and the district court didn't address it? I think you could say that. As I said, Mr. Fisher certainly said that his lawyer told him that the sentences would be consecutive. Now, he may or may not have actually said that, but he certainly at least gave him the clear impression that it was on the table, and then he failed to put it on the table. So in that sense, he certainly dropped the ball. Just briefly— It's not as though the sentencing judge was unaware of this circumstance. It's in the—she was cited. Well, she said that she read the plea minutes. Yes, and there it is. Well, again, there's no—it's much too important a thing to just ignore it and then leave it to the discretion of the Bureau of Prisons. And if I can just briefly address that, I would say that they abused their discretion because their stated reason was that concurrency didn't meet the goals of the criminal justice system. And I don't know if it was ever the goal of the criminal justice system to maximize incarceration, but if it ever was, that was years ago. The state defense had nothing to do with the federal. No, it didn't. But still, clearly, the question of concurrency was on the table. The guidelines range for the federal sentence— It may be on the table, but that doesn't mean it's abusive. But the guidelines range for the federal sentence was significantly lower than the mandatory minimum. So by applying the concurrency, it would have effectively brought the federal sentence down to what the guidelines suggested that it should be. Now, the goal of the criminal justice system—and I include in that the courts, the Bureau of Prisons, the prosecution, all of us— these days is clearly not to maximize incarceration. We're doing everything we can to stop— You seem to be doing a good job at doing that. But in this case, the Bureau of Prisons said it was inconsistent with the goals of the criminal justice system to do the concurrency. And the goals should not be, at least any more, to maximize incarceration. That's not it. What they may have been saying is that there's two completely different offenses offending two different sovereigns. And there's little reason—and the judge is not interested in intervening. Well, the judge should have to say on the record, I'm not interested in intervening. It should not be left, ultimately, to an administrator in the Bureau of Prisons to do that job. Isn't that what the rules and regulations say, that they should consult the judge? And if not, it's their discretion. It's what they're supposed to do. Right. They may be right or wrong, but they're the ones to make the decision. Even those rules don't contemplate the actual judge who was sitting at sentencing ignoring the request. The rules talk about if there's a new judge, you ask for their opinion. And if they don't give you an opinion, then you go— Even the rules don't contemplate a judge not bothering to respond. But didn't the Bureau of Prisons make multiple efforts, make multiple phone calls, repeated efforts to have the district court give some input? They did send— It's hard to see how they abused their discretion. Well, they didn't abuse their discretion by not making an effort, but I think they abused their discretion in the decision that they reached on the concurrency once they actually addressed the issue themselves, especially for the reason given. I think it's unfair to say that they articulated the decision in terms of maximizing the term of imprisonment. They looked at the goals of the criminal justice system, the other factors. They applied them. It's hard to find an abuse. It just came to a different determination than the one you're pressing. If we were to conclude there was an issue on ineffective assistance of counsel, then the remedy would be to remand to the district judge to hold a hearing on that? I believe that's correct, Your Honor. Thank you. I see my time is well up. Well, you've reserved some rebuttal, so we shall hear you then. Yes, good morning. Good morning, judges. May it please the Court. Karen Folster-Lesperance, assistant United States attorney from the Northern District of New York, for the word in Hudson. Well, to cut to the chase, how do we know what the trial judge wanted to do? Well, unfortunately we don't. I think everybody here would be in a better position had the judge simply responded to the request. However, there are a number of factors that indicate that she did not feel strongly that there should have been a concurrent sentence. She did, in fact, indicate that she had read the minutes of the change of plea hearing in which this was expressly discussed, and it was recorded in the transcript. There were multiple attempts. BOP documents not only the March 8th letter but eight subsequent phone calls. The letter that BOP sent to her said, if we do not hear back from you within 60 days under our regulations, we will make the decision. She was well aware that if she failed to act then isn't it a decision? If you tell somebody unless you do something within this period of time, something else will happen. And if they don't do anything, then doesn't it mean that they made a decision? It doesn't necessarily mean that they made a decision, but you can certainly infer from that that she didn't feel strongly that there should have been a concurrent sentence here, otherwise she would have responded to the Court. But what the judge did or what the CJA counsel did in this case is really not the issue. The only issue on this petition, which is a 2241 petition, is whether or not BOP in making the determination that it made abused its discretion, and there's simply no evidence of that. If, nevertheless, it leaps out at us that there is ineffective assistance of counsel, or at least an issue that ought to be explored, you're not saying we don't have the authority to send it to the district judge saying, while we don't find any abuse of discretion by the Bureau of Prisons, we think you should, with this previously pro se litigant, explore ineffective assistance of counsel, right? So I have two points on that. The first, and I apologize to the Court for not raising this in my briefs, but I had pulled the Eastern District docket at the time of the notice of appeal and didn't refresh it at the time of briefing. I have since refreshed it, and it appears this prisoner has filed a section 2255 petition arguing ineffective assistance of counsel in the Eastern District of New York, which is the court of the criminal conviction. That motion has not yet been determined. So his ineffective assistance arguments are pending before the Eastern District of New York, which is the proper court for them to be heard in. This petition was brought in the Northern District because that's his district of incarceration. It was simply a challenge of the computation of sentence. And I would argue, in fact, that on that 2241 petition challenging computation of sentence, the ineffective assistance of counsel would not be properly raised, would not be proper before the district court or before this court because he would have an alternate adequate remedy under 2255 in his sentencing court, which he has now availed himself of. So can you send us the docket number or the citation to that? Yes, it's docket number. One second. It was filed on September 14th of 2015. It's docket number 834 in the Eastern District of New York. No, that's the docket. Sorry. That's the document number. Yes. I apologize. It's 06CR413 is the Eastern District of New York's docket number. And the motion was docket number 834 in that case. And so given that the fact that the ineffective assistance of counsel issue is properly before the sentencing court in the criminal matter, the sole issue before this panel today is the BOP's abuse of discretion or the allegation that they abuse their discretion. The government is not going to impose any jurisdiction or other timeliness, objection, or anything else to the issue that's been raised in the 2255, I take it? The government's response to the 2255 petition in the Eastern District of New York is obviously outside my office's jurisdiction. There is a response to that petition. I understand. But then the problem is you don't want people falling between two stools. You're urging this as a fair and reasonable alternative to any problem of ineffectiveness. I understand that. I do see that there are timely initiatives with the 2255. The Eastern District's U.S. Attorney's Office has not yet taken that position, although their response did not really interpret the motion as a 2255. Because it was filed a year ago. Yes. So the timeliness objections have not been interposed by the Eastern District U.S. Attorney's Office at this point in time. Yes. Okay. And so turning to the issue of whether BOP abused its discretion, there are five factors which are very clearly set forth in the statute. They went through. There's a worksheet. It's in the record on page 98 where they themselves worked through, made notes and comments on each of the five factors, and then they set forth a written response to the petitioner in which there was a full discussion of why the factors weighed against concurrent sentences in this instance. There was full and fair consideration, and it was, in fact, within the goals of justice to run the sentences consecutively. The crimes were completely unrelated. His criminal history was. What were they? The federal crime that he was first sentenced in the Eastern District of New York was a conspiracy to distribute cocaine. It was a multi-defendant drug conspiracy case. The state charge that was pending at the time of his sentencing was murder in the second degree and criminal possession of a weapon. Subsequent to his federal sentencing, he pled guilty to the criminal possession of a weapons charge, and he served five years in state prison for that. So he did have that subsequent guilty plea by the time the BOP determined the question. He also had a sanction for fighting in prison within his first couple of months at FCI Raybrook, and this was a person who was 20 years old, had multiple felony convictions. The charge that he was being sentenced for had been committed within a year of his release from jail and a prior conviction. All of these things were considered by BOP, and there was no abuse of discretion in the decision that they made. I do say I have some time remaining, but unless the panel has additional questions for me, I would rest in my briefs. Thank you. Thank you. Well, I'm also—it's news to me about the 2255, but I'm also concerned that the ineffectiveness— If I may ask, is he counseled in that 2255? Pro se. Yes. Well, you may want to make a note. If there's any way that this Court can keep our issue alive until we know that it's actually going to be heard in the Easton District, that would certainly seem like a good idea, because it does seem to have all the earmarks of a case that can slip between the two, that you could find that it's not properly raised here and that it's going to be heard in the Easton District, and then it could be dismissed there under the AEDPA, the statute of limitations. I hear you. If there's anything that this panel can do to prevent that from happening, I think that would be really good. Thank you. Thank you. Thank you both. We will reserve decision at this time.